United States District Court
Southern District of Texas
**ENTERED**
December 08, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| JEWELL THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 2:22-CV-00158 |
| | § | |
| GEORGY SAMUEL, *et al*, | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**</u>

Plaintiff Jewell Thomas, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff asserts claims against Defendants under the Eighth Amendment, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A), and the Rehabilitation Act (RA), 29 U.S.C. § 794.  Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

For purposes of screening and pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), the undersigned recommends that Plaintiff's Eighth Amendment deliberate indifference allegations be DISMISSED with prejudice because they fail to state a claim upon which relief may be granted and are frivolous.  For the same reason, the undersigned also recommends that Plaintiff's ADA and RA claims against Defendants in their individual capacities, and his ADA and RA claims for intentional discrimination, be DISMISSED with prejudice.  The undersigned

recommends further that the dismissal of this case count as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

### A. Jurisdiction.

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

### B. Background.

#### 1. Plaintiff's present § 1983 action.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the McConnell Unit in Beeville, Texas.  Plaintiff's claims in this case arise from the alleged confiscation of an orthopedic boot.

In this action, Plaintiff sues the following defendants: Registered Nurse Georgy Samuel ("RN Samuel"); Dr. Isaac Kwarteng ("Dr. Kwarteng"); Dr. Lanette Linthicum ("Dr. Linthicum"); McConnell Unit Warden Jerry Sanchez ("Warden Sanchez"); TDCJ Executive Director Bryan Collier ("Director Collier"); Officer Reymundo Reyes ("Officer Reyes"); and Officer Adan Cavasco ("Officer Cavasco").  (Doc. No. 1, pp. 10-18.)  Plaintiff generally claims that Defendants violated his Eighth Amendment and ADA and RA rights in connection with the

---

[1] Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury.  *See* 28 U.S.C. § 1915(g).  Plaintiff is a very active litigant: he has filed 14 lawsuits in this district in 2022, plus an application for habeas corpus relief.  The undersigned observes that Plaintiff has already incurred two strikes, by virtue of the district court's dismissals of other cases he has filed in this division.  *See* Order Adopting Memorandum & Recommendation, *Thomas v. Carter*, No. 2:22-cv-00133 (S.D. Tex. Oct. 31, 2022); Order Adopting Memorandum & Recommendation, *Thomas v. Sanchez*, No. 2:22-cv-00122 (S.D. Tex. Nov. 17, 2022).

confiscation of a prescribed orthopedic boot. *Id.* Plaintiff seeks monetary relief and injunctive relief in the form of the return of the boot. *Id*. at 8; Doc. No. 10, pp. 95-96.

### 2. The Spears hearing.

The undersigned conducted a *Spears*[2] hearing in which Plaintiff was given an opportunity to explain his claims. The following representations were made either in Plaintiff's Original Complaint (Doc. No. 1) or at the *Spears* hearing and are taken as true for purposes of this memorandum and recommendation.

Years ago, before his incarceration, Plaintiff suffered serious injuries to his left leg in the form of an open tibia fracture. (Doc. No. 10, p. 63.) As a result, he has a deformity in his foot, ankle, and lower left extremity. *Id.* In addition, Plaintiff has, as he describes it, a "huge" wound close to the left ankle and has had a skin graft performed on the calf muscle of his left leg. *Id.*

On January 4, 2022, while incarcerated, Plaintiff fell down a flight of stairs, which caused further injury to his left leg and foot. (Doc. No. 10, p. 63.) Even before his fall down the stairs, Plaintiff states that he was suffering pain levels registering an eight on a scale of one to ten, with ten being the most extreme pain level. *Id.* at 64. On January 5, 2022, after Plaintiff's fall, a doctor from a hospital's emergency room allegedly prescribed Plaintiff with an orthopedic boot for his left leg and foot. *Id.* at 63, 65, 69. Plaintiff left the hospital wearing the prescribed boot. *Id.* at 67.

Dr. Kwarteng examined Plaintiff when he returned from the hospital and referred Plaintiff to the unit's "Brace and Limb" clinic. (Doc. No. 10, pp. 67, 72-73.) According to Plaintiff, policies and procedures are in place for medical providers to prescribe devices like an orthopedic boot when an injury warrants it. *Id.* at 74.

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

Plaintiff testified that the orthopedic boot alleviated his pain by allowing his left foot to hold in place forward.  (Doc. No. 10, p. 65.)  Plaintiff testified that he also suffers from what he terms a "lateral pelvic tilt."  *Id.* at 66.  By wearing the orthopedic boot, Plaintiff's hip adjusted to the normal position.  *Id.*  As a result, Plaintiff was able to walk evenly which, he says, served to reduce "pain all over [his] body."  *Id.*  While wearing the orthopedic boot, Plaintiff was in less pain than before he fell down the stairs.  *Id.*

On February 6, 2022, approximately a month after Plaintiff's fall down the stairs, Plaintiff engaged in a verbal altercation with an officer while he was at the prison's Diabetic Clinic.  (Doc. No. 10, p. 68.)  Following the altercation, Plaintiff was placed in segregated housing.  *Id.*  RN Samuel saw Plaintiff that day wearing the orthopedic boot.  *Id.*  Plaintiff testified that he had never told RN Samuel about how much the boot helped him with his daily activities and pain levels.  *Id.* at 69.  Plaintiff alleges, however, that RN Samuel was well aware of Plaintiff's serious leg injuries and had seen Plaintiff wearing the boot every day.  *Id.*  Said Plaintiff: "He's seen my leg before and I'm wearing this thing every day.  So I think common sense would say that it's needed."  *Id.*

It is Plaintiff's understanding that RN Samuel directed security officials to confiscate Plaintiff's orthopedic boot.  (Doc. No. 10, p. 68.)  While in his solitary cell, two or three security officials approached Plaintiff and informed him that "they have medical orders to confiscate the boot because [Plaintiff does not] have a passport."[3]  *Id.* at 68, 71.  According to Plaintiff, passports (or passes) are needed to possess and use medical devices.  *Id.* at 71.  These security

---

[3]  The word "passport" appears in the transcript of the *Spears* hearing.  The undersigned recalls that Plaintiff actually said "pass for it," meaning a permission note to possess the orthopedic boot.

officials also told Plaintiff that the boot was being confiscated because Plaintiff did not need it. *Id.*

Plaintiff states that RN Samuel acted with deliberate indifference to his serious medical needs by interfering with treatment after it was prescribed. (Doc. No. 10, p. 74.) Plaintiff believes that RN Samuel, as a nurse, should have sought consent from a doctor before seeking to confiscate the boot. *Id.* at 75-76. Plaintiff further asserts that RN Samuel intentionally discriminated against Plaintiff in violation of his ADA and RA rights when he ordered the boot to be confiscated even though the boot was accommodating Plaintiff's physical disabilities. *Id.* at 75. With respect to his Eighth Amendment and ADA and RA claims, Plaintiff sues RN Samuel in his individual and official capacities. *Id.* at 76.

At the *Spears* hearing, Plaintiff acknowledged that Dr. Kwarteng had no role in confiscating the boot. (Doc. No. 10, p. 77.) However, Plaintiff asserts that Dr. Kwarteng acted with deliberate indifference to his serious medical needs by failing to have a policy or practice in place requiring RN Samuel to check with Dr. Kwarteng first before confiscating Plaintiff's boot. *Id.* at 77-79. Plaintiff further holds Dr. Kwarteng responsible for failing to train his subordinates on how to examine individuals who need ambulatory devices. *Id.* at 79. Plaintiff testified at the *Spears* hearing that he and Dr. Kwarteng had spoken about Plaintiff's need for treatment of his leg even before Plaintiff's fall down the stairs. *Id.* at 73. After the fall, Dr. Kwarteng referred Plaintiff to TDCJ's Brace and Limb clinic. *Id.* at 67-68, 73. Plaintiff sues Dr. Kwarteng under the ADA and RA for failing to provide him with a reasonable accommodation for his physical disabilities and for failing to give Plaintiff the boot back. *Id.* at 77. With respect to his Eighth Amendment and ADA and RA claims, Plaintiff sues Dr. Kwarteng in his individual and official capacities. *Id.* at 79.

Plaintiff identified Officer Reyes as one of the security guards who threatened Plaintiff to turn over the boot and then confiscated the boot pursuant to RN Samuel's medical order.  (Doc. No. 10, pp. 79-80.)  Even though he states that Officer Reyes was acting under a medical order, Plaintiff believes that Officer Reyes acted with deliberate indifference to his serious medical needs by interfering with Plaintiff's prescribed treatment.  *Id.* at 80.  Plaintiff sues Officer Reyes under the ADA and RA for denying Plaintiff a reasonable accommodation for his physical disabilities by taking the boot.  *Id.* at 81.  With respect to his Eighth Amendment and ADA and RA claims, Plaintiff sues Officer Reyes in his individual and official capacities.  *Id.* at 81, 84.

Plaintiff identified Officer Cavasco as Officer Reyes' boss.  (Doc. No. 10, pp. 81-82.) Officer Cavasco joined with Officer Reyes in threatening Plaintiff to turn over the boot, leading to the confiscation of the boot under the medical order.  *Id.* at 82-83.  Plaintiff acknowledged that Officers Reyes and Cavasco would not have confiscated the boot without the medical order from RN Samuel.  *Id.*  Nevertheless, even though Officer Cavasco was acting under the medical order, Plaintiff believes that Officer Cavasco acted with deliberate indifference to his serious medical needs by interfering with Plaintiff's prescribed treatment.  *Id.* at 83-84.  Plaintiff sues Officer Cavasco under the ADA and RA for denying Plaintiff a reasonable accommodation for his physical disabilities by taking the boot.  *Id.* at 84.  With respect to his Eighth Amendment and ADA and RA claims, Plaintiff sues Officer Cavasco in his individual and official capacities.  *Id.*

Plaintiff alleges that that he sent multiple "I-60"[4] requests to Warden Sanchez informing him about the confiscation of the boot.  (Doc. No. 10, p. 85.)  Warden Sanchez did not respond to any of Plaintiff's I-60s.  *Id.*  Warden Sanchez, Plaintiff alleges, was also aware of a grievance

---

[4]  An "I-60" is a simple all-purpose form for written requests.  (Doc. No. 10, p. 50.)

that Plaintiff filed with respect to the boot.  *Id.* at 85-86.  The response to his grievance informed Plaintiff that he had been referred to the Brace and Limb clinic.  *Id.* at 88.

Plaintiff states that Warden Sanchez acted with deliberate indifference to his serious medical needs by not giving Plaintiff the boot back even though Warden Sanchez was allegedly aware of the situation through Plaintiff's I-60 requests and formal grievance.  (Doc. No. 10, pp. 88-89.)  Plaintiff believes that Warden Sanchez was responsible based on a policy or procedure in which security officers are required to follow medical orders.  *Id.* at 89.  Plaintiff sues Warden Sanchez under the ADA and RA for failing to provide him with a reasonable accommodation for his physical disabilities by refusing to give Plaintiff the boot back.  *Id.*  With respect to his Eighth Amendment and ADA and RA claims, Plaintiff sues Warden Sanchez in his individual and official capacities.  *Id.*

Plaintiff identified Dr. Linthicum as the Health Services Director in charge of all the medical staff, including Dr. Kwarteng.  (Doc. No. 10, p. 90.)  Dr. Linthicum does not work at the McConnell Unit.  *Id.*  Plaintiff did not communicate with Dr. Linthicum regarding the taking of the boot.  *Id.* at 91.  Plaintiff holds Dr. Linthicum responsible for allegedly implementing or enforcing an unwritten policy allowing for nurses like RN Samuel to confiscate medical devices that have been prescribed by a doctor.  *Id.* at 92.  Plaintiff sues Dr. Linthicum under the ADA and RA for failing to provide him with a reasonable accommodation for his physical disabilities by refusing to give Plaintiff the boot back; he does not sue Dr. Linthicum under the Eighth Amendment.  *Id.* at 92, 93.  With respect to his ADA and RA claims, Plaintiff sues Dr. Linthicum only in her official capacity.  *Id.* at 94.

Plaintiff did not communicate with TDCJ Executive Director Collier regarding the taking of the boot.  (Doc. No. 10, p. 94.)  Plaintiff holds Director Collier responsible for implementing

or enforcing the same unwritten policy allowing nurses like RN Samuel to confiscate medical devices that have been prescribed by a doctor.  *Id.*  Plaintiff sues Director Collier under the ADA and RA for failing to provide him with a reasonable accommodation for his physical disabilities by refusing to give Plaintiff the boot back.  *Id.* at 95.  He does not sue Director Collier under the Eighth Amendment.  *Id.*  With respect to his ADA and RA claims, Plaintiff sues Director Collier in his individual and official capacities.  *Id.*

Plaintiff stated at the *Spears* hearing that, in addition to monetary relief, he seeks injunctive relief in the form of the return of the boot.  (Doc. No. 10, pp. 95-96.)

Further facts necessary to the disposition of this case are set forth in the sections below.

### C.  Legal standard for screening of Plaintiff's complaint.

When a prisoner seeks to proceed *in forma pauperis*, the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous or malicious, that it fails to state a claim upon which relief can be granted, or that it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A; *see* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant).  A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).  A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless."  *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.* At the same time, courts are not at liberty to create a cause of action where there is none. *See Cledera v. United States*, 834 F. App'x 969, 972 (5th Cir. 2021) (citing *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980)).

### D.  Plaintiff's § 1983 claims should be dismissed.

Plaintiff brings claims against various defendants for allegedly violating his rights under the Eighth Amendment. The undersigned concludes that Plaintiff has pleaded his best case with regard to his Eighth Amendment allegations.[5] For the reasons discussed below, Plaintiff's claims, brought under § 1983, should be dismissed.

---

[5] *See Jones*, 188 F.3d at 327.

9 / 35

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties.  *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).  There is no vicarious or *respondeat superior* liability of supervisors under § 1983.  *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

A supervisory official may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."  *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011). "A policy is normally an official statement, ordinance, or regulation, but in certain circumstances a persistent, widespread practice that is so commonplace as to constitute a custom can also be treated as policy."  *McNeil v. Caruso*, No. 17-01688, 2019 WL 1435831, at *2 (M.D. La. Mar. 28, 2019) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

### 1. The Eleventh Amendment bars Plaintiff's § 1983 claims against RN Samuel, Dr. Kwarteng, Officers Reyes and Cavasco, and Warden Sanchez in their official capacities.

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment to the United States Constitution, however, prevents federal courts from hearing cases brought by citizens of a State against their own State. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). It also bars claims for money damages against a state or state agency. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Tex. Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent that Plaintiff sues RN Samuel, Dr. Kwarteng, Officers Reyes and Cavasco, and Warden Sanchez in their official capacities for money damages, such § 1983 claims are barred by the Eleventh Amendment.[6] Thus, the undersigned recommends that Plaintiff's claims for money damages against these defendants in their official capacities be dismissed with prejudice.

---

[6] RN Samuel and Dr. Kwarteng may be employed by the University of Texas Medical Branch (UTMB) and not by TDCJ. Even if that is the case, however, the claims against them for monetary damages would still be barred by the Eleventh Amendment. *See Lewis v. U. of Texas Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011); *Davis v. Linthicum*, No. 2:21-cv-00150, 2021 WL 6010576, at *3 (S.D. Tex. Sept. 2, 2021) (Hampton, M.J.), *adopted*, 2021 WL 5446512 (S.D. Tex. Nov. 22, 2021).

### 2. The Court should dismiss Plaintiff's Eighth Amendment claims against RN Samuel, Officers Reyes and Cavasco, Dr. Kwarteng, and Warden Sanchez.

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (*per curiam*) (internal quotations omitted)).  An Eighth Amendment violation occurs when a prison official acts with deliberate indifference to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The test for Eighth Amendment deliberate indifference has both an objective and subjective prong.  *Id.* at 839.  Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)).  To prove the subjective prong of the deliberate indifference test, the inmate "must establish that the defendants were aware of an excessive [or substantial] risk to the plaintiff's health or safety, and yet consciously disregarded the risk." *Cook v. Crow*, No. 1:20-CV-85, 2021 WL 6206795, at *3 (E.D. Tex. July 26, 2021), *adopted*, 2022 WL 23169 (E.D. Tex. Jan. 3, 2022) (citing *Farmer*, 511 U.S. at 397, and *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)).  The failure to alleviate a significant risk that an official should have perceived, but did not, does not constitute deliberate indifference.  *Farmer*, 511 U.S. at 838.  Deliberate indifference "is subjective; it requires a showing that prison officials had actual knowledge of a risk and disregarded it." *Valentine v. Collier*, 978 F.3d 154, 163 (5th Cir. 2020).

Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). A "serious medical need" is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12. Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have intentionally interfered with or denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Id.* at 104-05. The prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert* 463 F.3d at 346 (internal quotation marks and citation omitted).

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). The Fifth Circuit has "consistently recognized . . . that 'deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.'" *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 458–59 (5th Cir. 2001)); *see also Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. 2021) ("Negligence or even gross negligence is not enough, the officials must have actual knowledge of the substantial risk"). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

### a. Plaintiff's deliberate indifference claim against RN Samuel should be dismissed.

Plaintiff alleges that years ago he suffered significant injuries to his left leg, leaving him in chronic pain, that he further hurt his left leg when he fell down a flight of stairs on January 4, 2022, that on the following day a hospital's emergency room doctor prescribed him an orthopedic boot for his lower left leg and foot, and that his pain levels were significantly reduced while wearing the boot.  (Doc. No. 10, pp. 63-66, 69.)  Plaintiff testified that upon his return from the emergency room, he was examined by Dr. Kwarteng, who referred Plaintiff to TDCJ's Brace and Limb clinic.  *Id.* at 72-73.  Plaintiff stated that he would wear the boot until he could visit the Brace and Limb clinic "so that I can actually be given a TDC[J] boot, if you will."  *Id.* at 66.  Plaintiff alleges, however, that RN Samuel, despite seeing Plaintiff wearing the orthopedic boot and being aware of Plaintiff's serious leg injuries, nevertheless ordered security guards on February 6, 2022 to confiscate the boot.  *Id.* at 68-69.

But even accepted as true and construed liberally, Plaintiff's allegations do not state a deliberate indifference claim against RN Samuel for purposes of screening.  Plaintiff alleges the existence of a serious medical need: a painful leg condition for which treatment had been recommended: he described how the emergency room doctor prescribed the orthopedic boot, and he described how Dr. Kwarteng had not confiscated that boot but instead referred him to the Brace and Limb clinic.  (Doc. No. 10, pp. 67, 73.)  Plaintiff testified that RN Samuel was aware of Plaintiff's leg injuries and had seen Plaintiff's injuries before.  RN Samuel, Plaintiff alleges, prepared Plaintiff's leg for the trip to the emergency room after Plaintiff fell down the stairs. (Doc. No. 1, p. 12.)  Plaintiff acknowledged that he and RN Samuel "never talked about" how much the boot helped Plaintiff.  (Doc. No. 10, p. 69.)  But Plaintiff added, "[RN Samuel] knew

the nature of my injuries.  He's seen my leg before and I'm wearing this thing [the boot] every day.  So I think common sense would say it's needed."  *Id.*

Plaintiff's pleading and testimony do not, however, allege that RN Samuel had actual knowledge that the orthopedic boot had been prescribed to Plaintiff.  During the *Spears* hearing, Plaintiff testified that RN Samuel gave two reasons for ordering the confiscation of the boot: first, that Plaintiff did not have a pass for the boot, and second, that Plaintiff did not need the boot.  (Doc. No. 10, pp. 68, 71.)  The absence of an allegation of actual knowledge is fatal to Plaintiff's claim regarding the subjective prong of the deliberate indifference test, because to state a claim for deliberate indifference Plaintiff is required to allege that RN Samuel knew of and disregarded an excessive risk to Plaintiff's safety.  *See Farmer*, 511 U.S. at 837; *Valentine*, 978 F.3d at 163.

In *Hunt v. Pierson*, 730 F. App'x 210 (5th Cir. 2018) (*per curiam*), the plaintiff alleged that a prison nurse practitioner acted with deliberate indifference by interfering with prescribed medical treatment: the plaintiff alleged that the nurse wrongly confiscated a cane for which the plaintiff had received a permanent pass from the prison doctor.  *Id.* at 213.  The nurse had seen the plaintiff ambulating without the cane and decided that the plaintiff did not need it.  *Id.* at 214.  There was no evidence, however, that the nurse was actually aware that the doctor had granted the permanent pass for the cane.  The Fifth Circuit upheld the district court's grant of summary judgment because the nurse did not have actual knowledge that the permanent pass had been issued.  "At best," the Fifth Circuit said, "a case for medical malpractice or negligence could be made against [the nurse] to the extent that, as one of his providers, she was charged with knowledge of the contents of his medical records; however, such acts do not constitute deliberate indifference."  *Id.* (citing *Gobert*, 463 F.3d at 346.)

15 / 35

So too here.  Plaintiff does not allege that RN Samuel had actual knowledge that Plaintiff had been prescribed the orthopedic boot.  Plaintiff states that the reasons given for the confiscation were that the Plaintiff did not have a pass for the boot and that he did not need it.  At most, Plaintiff's allegation is that RN Samuel should have known, through "common sense," that Plaintiff needed the orthopedic boot, *see* Doc. No. 10, p. 69, or that RN Samuel, as a medical provider, should have known that Plaintiff had been prescribed the boot.  Because at least an allegation of actual knowledge of the prescription is required at the screening stage, Plaintiff fails to state a viable deliberate indifference claim against RN Samuel.  RN Samuel may have acted carelessly or negligently, and he may have been aware of Plaintiff's leg condition and Plaintiff's fall down the stairs, but there is no allegation that he actually knew of any prescription for the boot.  There is likewise no allegation that RN Samuel actually knew of any particular risk associated with a taking of the boot, or that he disregarded it.[7]

In certain circumstances, a prison official's knowledge of substantial risk may be inferred if the risk was obvious.  *Farmer*, 511 U.S. at 842-43; *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).  In *Easter*, the prison nurse knew that the plaintiff had a heart condition, was experiencing severe chest pain, and did not have his prescribed medication, and there was an allegation and evidence that the nurse had been exposed to the plaintiff's medical chart that indicated the plaintiff's medical condition.  But the nurse failed to provide the plaintiff with his needed medication or with treatment of any kind, resulting in significant harm to the plaintiff.

---

[7] Additionally, case law notes that TDCJ policy provides that outside physicians (like the emergency room physician in Plaintiff's case) can only make recommendations, not binding orders, regarding health care for TDCJ inmates.  *See Tijerina v. Stanley*, No. 5:16-cv-102, 2019 WL 1396964, at *6 (E.D. Tex. Mar. 28, 2019); *Fenlon v. Quarterman*, No. 6:07-cv-532, 2008 WL 637627, at *21 (E.D. Tex. Mar. 5, 2008).  Therefore, to the extent that Plaintiff attempts to allege that RN Samuel intentionally interfered in prescribed medical treatment by overriding an order by the emergency room doctor, that claim is also not a viable one for deliberate indifference.

*Easter*, 469 F.3d at 463.  Such circumstances are not present here.  Plaintiff has offered no allegation that his physical condition presented such an obvious risk that any reasonable person would recognize that keeping the boot was unmistakably necessary in order to avert a serious risk to Plaintiff's health or safety.  Although Plaintiff's leg condition might be apparent to those who see it, the specific need for an orthopedic boot is not so obvious, and Plaintiff does not allege that the specific need for the boot was obvious.  This lack of obviousness takes Plaintiff's case outside the realm of those contemplated in *Farmer* and *Easter*.

Plaintiff's allegation of deliberate indifference by RN Samuel fails to state a claim for which relief may be granted.  The undersigned therefore recommends dismissal of that claim.

### b.  Plaintiff's deliberate indifference claims against Officers Reyes and Cavasco should be dismissed.

Plaintiff alleges that Officers Reyes and Cavasco confiscated Plaintiff's orthopedic boot pursuant to RN Samuel's medical order.  (Doc. No. 10, pp. 68, 71, 79-83.)  He testified at the *Spears* hearing that neither Officer Reyes nor Officer Cavasco would have confiscated the boot without the medical order and were instead required to follow the medical order issued by RN Samuel.  (Doc. No. 10, pp. 81-83.)

Even though Plaintiff asserts that these defendants acted pursuant to a medical order, Plaintiff nevertheless claims that they acted with deliberate indifference to his serious medical needs by interfering with Plaintiff's prescribed treatment.  Plaintiff offers no allegation that either Officer Reyes or Officer Cavasco had any medical training or were otherwise aware of the importance of the orthopedic boot from a medical standpoint.  Plaintiff also offers no allegation that either officer was actually aware that Plaintiff had a prescription for the boot or that Plaintiff

17 / 35

had a genuine medical need for the boot.  He also offers no allegation that Officers Reyes or Cavasco had any authority to override a medical determination made by RN Samuel.

Plaintiff's allegations, even accepted as true, fail to indicate that either Officer Reyes or Officer Cavasco acted with deliberate indifference to Plaintiff's serious medical needs.  Plaintiff acknowledges that both were merely carrying out medical orders issued by RN Samuel to take away the orthopedic boot but asserts that in doing so "they interfered with treatment once it was prescribed."  (Doc. No. 10, pp. 83-84.)  To state a deliberate indifference claim, however, a plaintiff must allege facts indicating that the defendant was subjectively aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also that the official actually drew that inference.  *Dyer v. Houston*, 955 F.3d 501, 506 (5th Cir. 2020).

Here, Plaintiff makes no such allegation.  Plaintiff also does not allege that either Officer Reyes or Officer Cavasco were subjectively aware of anything other than the fact that Plaintiff was wearing an orthopedic boot.  He also does not allege that either officer was subjectively aware that he had a prescription for the boot.  Plaintiff does not allege that either officer was aware of any serious medical condition, that either officer was aware of any facts from which an inference could be drawn that a substantial risk of serious harm existed, or that either officer actually drew any inference that confiscation of the boot in accordance with RN Samuel's order would create a substantial risk of serious harm.  Additionally, Plaintiff acknowledges that Officers Reyes and Cavasco, both of whom are security personnel and not medical personnel, would not have taken the boot had they not been ordered to do so by RN Samuel.  (Doc. No. 10, p. 83.)

Plaintiff's mere allegation that Officers Reyes and Cavasco should not have confiscated the boot despite RN Samuel's medical order does not establish a showing of repugnant action to

18 / 35

constitute deliberate indifference, especially where RN Samuel's medical order was not facially

outrageous. *Cf. Montoya-Ortiz v. Brown*, 154 F. App'x 437, 439 (5th Cir. 2005) (*per curiam*)

(nurse not deliberately indifferent to prisoner's injury in following orders of physician);

*Shepherd v. Dallas Cnty., Tex.*, No. 3:05-CV-1442-D, 2008 WL 656889, at *8 (N.D. Tex. Mar.

6, 2008) (evidence that a prison nurse acted under a doctor's orders was "insufficient to show

that [the nurse] understood the risk of harm to [the inmate] and desired that harm"); *see also*

*Cope v. Cogdill*, 3 F.4th 198, 208 (5th Cir. 2021) (officials acting pursuant to prison policy are

essentially following orders and their acts do not violate clearly established law unless those

orders are "facially outrageous"). There is no allegation that Officers Reyes or Cavasco had any

authority to override the medical order allegedly issued by RN Samuel. Plaintiff's allegations

are insufficient to show that Officers Reyes and Cavasco understood the risk of harm to Plaintiff.

Plaintiff fails to allege a viable deliberate indifference claim against either Officer Reyes

or Officer Cavasco. The undersigned therefore recommends that Plaintiff's deliberate

indifference claims against them in their individual capacities be dismissed with prejudice for

failure to state a claim upon which relief may be granted.

### c. *Plaintiff's deliberate indifference claim against Dr. Kwarteng should be dismissed.*

Plaintiff concedes that Dr. Kwarteng had no role in confiscating the boot. (Doc. No. 10,

p. 77.) In fact, Dr. Kwarteng recommended that Plaintiff be seen at the Brace and Limb clinic.

*Id.* at 67. Plaintiff acknowledged during the *Spears* hearing that Dr. Kwarteng took no action

that would evidence deliberate indifference. *Id.* Instead, Plaintiff seeks a finding that Dr.

Kwarteng was deliberately indifferent in his supervisory capacity for failing to have a policy in

place requiring RN Samuel to check with Dr. Kwarteng first before confiscating the boot and

failing to train his subordinates on how to examine individuals who need ambulatory devices. *Id.* at 77-79. Plaintiff's claim cannot survive screening.

A plaintiff seeking to establish "supervisor liability for constitutional violations committed by subordinate employees . . . must show that the supervisor acted, or failed to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Porter*, 659 F.3d at 446 (cleaned up, emphasis deleted). A failure-to-supervise or failure-to-train claim also requires a showing of deliberate indifference by the supervisor. *See Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018); *Porter*, 659 F.3d at 446. Accordingly, a supervisory official like Dr. Kwarteng may be held liable only if he affirmatively participates in the acts that cause the constitutional deprivation or implements unconstitutional policies that causally result in the constitutional injury. *Porter*, 659 F.3d at 446. Plaintiff does not allege any personal participation by Dr. Kwarteng, so Plaintiff must rely on the latter theory.

But Plaintiff's allegations, even accepted as true, fail to show any pattern of unconstitutional conduct indicating that Dr. Kwarteng acted with deliberate indifference in his supervisory capacity. Rather than identify a written policy or a widespread practice in effect, Plaintiff complains conclusorily about the *absence* of a certain policy in place as a potential safeguard to protect Plaintiff from having his orthopedic boot confiscated. Other than the single incident involving the confiscation of his own orthopedic boot, Plaintiff identifies no other incident in which a subordinate medical or security official has confiscated any medical device from any inmate without first consulting with a doctor. Plaintiff further fails to allege any deliberate decision by Dr. Kwarteng to refrain from implementing a policy requiring consultation before confiscation of medical devices.

Because Plaintiff has made only a conclusory allegation about a pattern of conduct rather than a single discrete incident, his deliberate indifference claim against Dr. Kwarteng, based on an alleged failure to supervise or train subordinates, is subject to dismissal. *See Walker v. Upshaw*, 515 F. App'x 334, 340-41 (5th Cir. 2013) (reversing the district court's judgment and rendering judgment in favor of defendant where "[p]laintiffs [made] no attempt to show a pattern of [defendant's] employees failing to protect inmates"); *Bohannan v. Doe*, 527 F. App'x 283, 300 (5th Cir. 2013) (affirming dismissal of plaintiff's failure-to-train claim where plaintiff relied "on his specific injury, i.e., single-incident liability," instead of alleging a pattern of conduct, which was insufficient to impose liability); *Wagner v. Tex. Dep't of Criminal Justice*, No. 1:15cv177-BL, 2018 WL 2074142, at *6 (N.D. Tex. May 3, 2018) (dismissing prisoner's failure-to-train claim where he had not alleged sufficient facts to state a "causal connection between any failure to train and the deprivation of a constitutional right"). Accordingly, the undersigned recommends that Plaintiff's deliberate indifference claim against Dr. Kwarteng in his individual capacity be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### d. Plaintiff's deliberate indifference claim against Warden Sanchez should be dismissed.

Plaintiff claims that Warden Sanchez acted with deliberate indifference to his serious medical needs by not giving Plaintiff his orthopedic boot back even though Warden Sanchez was allegedly aware of the situation through Plaintiff's I-60 requests and his formal grievance. (Doc. No. 10, pp. 88-89.) Plaintiff seeks to hold Warden Sanchez responsible in his supervisory capacity for having a policy or procedure requiring security officers to follow medical orders. *Id.* at 89.

Plaintiff's allegations, even accepted as true, fail to state a deliberate indifference claim against Warden Sanchez.  The receipt of informal letter complaints or grievances is not sufficient to establish Warden Sanchez's personal involvement in the confiscation of the boot.  *Keys v. United States*, No. 3:17-CV-2940-N-BH, 2020 WL 2753143, at *4 (N.D. Tex. Apr. 20, 2020), *adopted,* 2020 WL 2745604 (N.D. Tex. May 27, 2020) ("Although he claims he submitted grievances to Warden regarding his inadequate dental care and waitlist status, a failure to respond to a letter or grievance does not rise to the required level of personal involvement for liability."); *Murphy v. Andrews*, No. 6:10CV508, 2011 WL 13152301, at *3 (E.D. Tex. Apr. 1, 2011), *adopted*, 2011 WL 13152302 (E.D. Tex. May 6, 2011) (inmate's claim that "he sent letters and I-60's to the warden's office and that the warden did not take such action as [the plaintiff] deemed appropriate" was "not sufficient to support a claim for Section 1983 liability").

Further, Plaintiff's allegations fail to show a pattern of unconstitutional conduct to indicate that Warden Sanchez acted with deliberate indifference in his supervisory capacity. Plaintiff fails to identify any written policy, alleging only an unwritten practice in which security officers are required to follow medical orders.  Other than the single incident involving the confiscation of his own orthopedic boot, Plaintiff identifies no other incident in which subordinate medical or security officials confiscated medical devices from inmates pursuant to medical orders.  Even if such a practice were in place on a widespread basis, Plaintiff does not allege that such a practice of following medical orders is unreasonable or signifies deliberate indifference to inmates' health – he merely claims that such a practice should not have been followed in his own case.

Plaintiff's deliberate indifference claim against Warden Sanchez in his supervisory capacity is therefore subject to dismissal.  *See* Porter, 659 F.3d at 446; Walker, 515 F. App'x at

22 / 35

340-41.  The undersigned recommends that Plaintiff's deliberate indifference claim against Warden Sanchez in his individual capacity be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### E.  Plaintiff's ADA and RA claims should be dismissed.

Plaintiff brings ADA and RA claims against each defendant in his or her official capacity.  He also brings ADA and RA claims against each of the defendants except Dr. Linthicum in their individual capacities.  Plaintiff alleges that Defendants engaged in intentional discrimination by reason of Plaintiff's disability, through actions to confiscate the orthopedic boot, which Plaintiff alleges had previously been prescribed to him by an emergency room doctor.  *See* Doc. No. 10, p. 75.  Plaintiff seeks $250,000 in compensatory damages, and also requests the return of the boot.  (Doc. No. 10, pp. 95-96.)  For the reasons discussed below, Plaintiff's ADA and RA claims should be dismissed with prejudice.

### 1.  Provisions of the ADA and RA.

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, under the RA, "[n]o qualified individual with a disability . . .  shall, solely by reason of her or his such disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

"The RA is operationally identical to the ADA in that both statutes prohibit discrimination against disabled persons; however, the ADA applies only to public entities while the RA applies to any federally funded programs or activities, whether public or private."  *Borum*

*v. Swisher Cnty.*, No. 2:14-CV-127-J, 2015 WL 327508, at *3 (N.D. Tex. Jan. 26, 2015) (citing

*Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)).  Courts utilize the same standards in

analyzing claims under both the ADA and RA.  *See Frame v. City of Arlington*, 657 F.3d 215,

223-24 (5th Cir. 2011).  Therefore, even though Plaintiff has segregated the ADA and RA claims

from one another in his pleadings, the undersigned analyzes his ADA and RA claims as though

they were raised in a single claim.  *See Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir.

2020).

      To establish a valid ADA claim, a plaintiff must show that (1) he has a qualifying

disability; (2) he is being denied the benefits of services, programs, or activities for which the

public entity is responsible, or is otherwise discriminated against by the public entity; and (3)

such discrimination is by reason of his disability.  *Miraglia v. Bd. of Supervisors of La. State

Museum*, 901 F.3d 565, 574 (5th Cir. 2018).  A qualifying disability is a "physical or mental

impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(a)(1).

The definition of "disability" is to be given broad construction.  *See id*. § 12102(4)(A).

      To "prevail on a Rehabilitation Act claim, the plaintiff must ultimately prove that the

defendant discriminated against him or her *solely* on the basis of disability."  *Taylor v. City of

Shreveport*, 798 F.3d 276, 284 (5th Cir. 2015) (emphasis in original); *see also Davidson v. Tex.

Dep't of Criminal Justice, Inst. Div.*, 91 F. App'x 963, 965 (5th Cir. 2004) (*per curiam*)

(applying similar standard for ADA claim).  To recover money damages, more is required:

Plaintiff must also show that the discrimination was intentional.  *Miraglia*, 901 F.3d at 574.

### 2. Plaintiff cannot bring ADA or RA claims against RN Samuel, Dr. Kwarteng, Officers Reyes and Cavasco, Warden Sanchez, or Director Collier in their individual capacities. These claims should be dismissed.

Plaintiff sues RN Samuel, Dr. Kwarteng, Officers Reyes and Cavasco, Warden Sanchez, and Director Collier in their individual capacities with respect to his ADA and RA claims. *See* Doc. No. 10, pp. 76 (RN Samuel), 79 (Dr. Kwarteng), 84 (Officers Reyes and Cavasco), 90 (Warden Sanchez), 95 (Director Collier).[8] A plaintiff cannot sue defendants in their individual capacities under either the ADA or RA. *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999); *Nottingham*, 499 F. App'x at 376 n.6; *Roberts v. Cooper*, No. 6:22cv102, 2022 WL 2442798, at *4 (E.D. Tex. Apr. 29, 2022), *adopted* 2022 WL 2440776 (E.D. Tex. Jul 5, 2022); *Payne v. Sutterfield*, No. 2:18-CV-084, 2021 WL 3173902, at *3 (N.D. Tex. Jul. 27, 2021). Accordingly, the undersigned recommends that Plaintiff's ADA and RA claims against RN Samuel, Dr. Kwarteng, Officers Reyes and Cavasco, Warden Sanchez, and Director Collier in their individual capacities be dismissed with prejudice as frivolous and for failure to state a claim upon which relief may be granted.

### 3. The Court should dismiss Plaintiff's ADA and RA claims against Dr. Kwarteng, Officers Reyes and Cavasco, Warden Sanchez, Director Collier, Dr. Linthicum, and RN Samuel in their official capacities.

#### a. Legal standard.

Plaintiff brings his ADA and RA claims against RN Samuel, Dr. Kwarteng, Officers Reyes and Cavasco, Warden Sanchez, Director Collier, and Dr. Linthicum in their official capacities. The ADA does not "itself prohibit suits against both the State and its agencies." *Patrick v. Martin*, No. 2:16-CV-216, 2018 WL 3966349, at *5 (N.D. Tex. Jun. 29, 2018),

---

[8] At the *Spears* hearing, in contrast to his testimony regarding the other defendants, Plaintiff indicated that he sues Dr. Linthicum only in her official capacity with respect to his ADA and RA claims. (Doc. No. 10, p. 94.)

*adopted* 2018 WL 3956484 (N.D. Tex. Aug. 17, 2018) (citing 42 U.S.C. §§ 12131(1)(a)-(b)). The Fifth Circuit further has held that state officers sued in their official capacities are proper defendants in suits brought under the ADA.  *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412-14 (5th Cir. 2004) ("Defendants have been sued in their official capacities and are therefore representing their respective state agencies (which are proper Title II defendants) for all purposes except the Eleventh Amendment.").[9]

As discussed above, to establish a valid ADA claim, a plaintiff must show that (1) he has a qualifying disability; (2) he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) such discrimination is by reason of his disability.  *Miraglia*, 901 F.3d at 574.  The Fifth Circuit has explained that a plaintiff can establish the third element of an ADA or RA claim – "by reason of his disability" – by showing that a defendant failed to make reasonable accommodations.  *Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 235 (5th Cir. 2017).

In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners.  *See United States v. Georgia,* 546 U.S. 151, 160 (2006) (recognizing prisoner's allegations that defendant refused to provide a necessary reasonable accommodation to a paraplegic inmate, "in such fundamentals as mobility, hygiene, medical care," resulted in the

---

[9]  To the extent that Dr. Kwarteng and RN Samuel may be employed by UTMB and not TDCJ, they nevertheless are amenable to suit under the ADA and RA, because UTMB is a state agency and its Eleventh Amendment immunity is coextensive with that of the State of Texas in a Title II ADA claim.  *See Lee v. UTMB Health of Clear Lake*, No. 4:20-CV-3364, 2021 WL 2650340, at *3 (S.D. Tex. June 28, 2021) (Hanen, J.); *see also Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016).

disabled inmate suffering serious punishment "without penal justification" and supported claims under the ADA and RA).

On the other hand, the ADA is not violated by "a prison's simply failing to attend to the medical needs of disabled prisoners." *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)); *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999) ("We do not in this opinion hold that the ADA imposed on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities.'"). Thus, the ADA does not cover "the mere absence or inadequacy of medical treatment for a prisoner." *See Whetstone v. Hall*, No. 4:17cv158-JMV, 2018 WL 522778, at *2 (N.D. Miss. Jan. 23, 2018). Instead, Plaintiff must show he was treated differently because of his qualified disability. *Nottingham*, 499 F. App'x at 376.

A failure to accommodate claim must offer "proof that 'the disability and its consequential limitations were known by the [entity providing public services]. . . . Mere knowledge of the disability is not enough; the service provider must also have understood 'the limitations [the plaintiff] experienced . . . *as a result* of that disability.'" *Windham*, 875 F.3d at 236 (citations omitted, bracketed text in original, emphasis in original). Otherwise, it would be impossible for the provider to ascertain whether an accommodation is needed at all, much less identify an accommodation that would be reasonable under the circumstances. *Id.* (citing *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996)).

The burden is on the plaintiff to "'specifically identify the disability and resulting limitations'" to the service provider. *Windham*, 875 F.3d at 237 (quoting *Taylor*, 93 F.3d at 165). This is because the ADA "does not require clairvoyance." *Hedberg v. Ind. Bell Tel. Co.*,

47 F.3d 928, 934 (7th Cir. 1995). "[K]nowledge of a disability is different from knowledge of the resulting limitation. And it certainly is different from knowledge of the necessary accommodation." *Windham*, 875 F.3d at 238. The burden is also on the plaintiff to request an accommodation in direct and specific terms. *Id.* at 237. If a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that the disability, the resulting limitation, and the necessary reasonable accommodation were "open, obvious, and apparent" to the public entity's relevant agents. *Valentine v. Collier*, 993 F.3d 270, 290 (5th Cir. 2021).

> **b. Plaintiff fails to allege a viable ADA or RA claim because he fails to explain how any disability created any limitation or impairment to his access to TDCJ services. Additionally, he never informed prison officials of any limitation or impairment caused by any disability. And any resulting limitation and necessary reasonable accommodation were not "open, obvious, and apparent."**

Plaintiff alleges in his complaint that the confiscation of the orthopedic boot caused him to be unable to "benefit from the services, programs and or activities that are available" within TDCJ, "such as medical services, cafeteria and law library." (Doc. No. 1, p. 10.) Confiscation of the boot, Plaintiff asserts, subjected Plaintiff to "severe and chronic pain while trying to participate in such programs, services, and activities" and "caused the plaintiff to be excluded from participating in or being denied the benefits of the services, programs, or activities . . . ." *Id.* at 12-13. His disabilities, Plaintiff says, "create obstacles to access" those programs, services, and activities. *Id.* at 13. Beyond these conclusory statements, Plaintiff fails to allege how any disability actually limited or impaired his ability to avail himself of any TDCJ program, service, or activity. In short, Plaintiff has not alleged that he has an "unequal ability to use and enjoy the facility" – that is, TDCJ programs, services, or activities – "compared to individuals who do not have a disability." *Providence Behavioral Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448,

459 (5th Cir. 2018).  Accordingly, his ADA and RA claims are subject to dismissal.  *Cf. Hay v. Thaler*, 470 F. App'x 411, 418 (5th Cir. 2012) (plaintiff failed to show how TDCJ's refusal to give him dentures prevented him from accessing TDCJ services; ADA and RA claims dismissed).

Plaintiff's claims are also subject to dismissal because he makes no allegation that he ever told any prison official that he was limited or impaired from availing himself of any TDCJ program, service, or activity.  Although Plaintiff alleges in his complaint that his access to the law library, cafeteria, and medical services has been impaired, *e.g.*, Doc. No. 1, p. 10, he fails to allege that he informed any prison official as much prior to filing this lawsuit.  No such allegation of impairment or limitation appears in any of Plaintiff's grievances, nor does Plaintiff allege in his complaint (or in his *Spears* hearing testimony) that he informed any prison official about any impairment to his ability to avail himself of any TDCJ program, service, or activity.

The facts in this case are similar to those in *Lee v. Dallas County*.  There, the plaintiff alleged "that he was in 'great pain' while in the custody of TDCJ because he was not provided a walker."  *See* No. 3:19-CV-2690-L, 2020 WL 7388602, at *8 (N.D. Tex. Dec. 16, 2020) (citation omitted).  The court concluded that while this allegation was sufficient to demonstrate that TDCJ had actual knowledge of the plaintiff's disability, it did not demonstrate that TDCJ had knowledge of any resulting limitation.  *Id*.

Here, similarly, in his grievances and as discussed in his *Spears* hearing testimony, Plaintiff complained that he was in pain and that the boot had been confiscated.  But Plaintiff did not tell anyone that (or how) the pain was hampering him from accessing medical services, the cafeteria, the law library, or any other TDCJ program or service.  And although Plaintiff now claims that his alleged disability creates obstacles to access TDCJ programs, services, and

activities, *see* Doc. No. 1, p. 13, there is no indication that Plaintiff ever notified any prison official of any such limitations prior to filing this lawsuit.  Plaintiff also never explains how confiscation of the boot gave him less meaningful access to TDCJ services.

  In short, while prison officials may have known about Plaintiff's leg condition, there is no allegation that they knew of any limitation or impairment that condition may have caused. Plaintiff therefore fails to allege a viable ADA or RA claim, because, as the *Windham* court stated, "knowledge of a disability is different from knowledge of the resulting limitation.  And it certainly is different from knowledge of the necessary accommodation."  875 F.3d at 238.

  Plaintiff may overcome his failure to allege actual knowledge of the resulting limitation from his disability only if he shows that "both his resulting limitation and necessary reasonable accommodation were open, obvious, and apparent to [TDCJ's] relevant agents."  *Lee*, 2020 WL 7388602, at *8 (citing *Smith v. Harris Cnty.*, 956 F.3d 311, 318 (5th Cir. 2020)).  They were not.

  Plaintiff testified at the *Spears* hearing that he made his leg issues known to Dr. Kwarteng prior to his fall down the stairs, and that the two discussed whether Dr. Kwarteng would refer Plaintiff to the Brace and Limb clinic.  (Doc. No. 10, p. 73.)  After Plaintiff's fall, Dr. Kwarteng did refer Plaintiff to that clinic.  *Id.*  Plaintiff alleged in a grievance that RN Samuel had observed Plaintiff "limping on countless occasions both with and without the use of the boot."  (Doc. No. 1-1, p. 3.)  Plaintiff testified at the *Spears* hearing that although he and RN Samuel had never discussed how the boot was helpful, but that RN Samuel was aware of Plaintiff's need for the boot: "I would say common sense, he knew the nature of my injuries. He's seen my leg before and I'm wearing this thing [the boot] every day.  So I would think common sense would say that it's needed."  (Doc. No. 10, p. 69.)

Plaintiff's allegations, construed liberally, indicate that prison officials knew of a medical condition that required treatment. Any resulting limitation on Plaintiff's ability to avail himself of any TDCJ program, service, or activity, however, is not apparent, and Plaintiff does not allege otherwise. At most, Plaintiff alleges his belief that his need for the boot as treatment for a medical condition was apparent; indeed, he attempts to lodge an Eighth Amendment deliberate indifference claim based on alleged interference with that medical treatment (the provision of the boot by the emergency room doctor). But even then, Plaintiff stated that RN Samuel had seen Plaintiff "limping on countless occasions both with and without the use of the boot." (Doc. No. 1-1, p. 3.) The boot's necessity as a reasonable accommodation, then, was anything but obvious.

Plaintiff's alleged situation is distinct from *McCoy v. Texas Department of Criminal Justice*. There, not only was plaintiff McCoy's disability (asthma) obvious, but so was the need for accommodation. *See* C.A. No. C-05-370, 2006 WL 2331055, at *8 (S.D. Tex. Aug. 9, 2006) (Jack, J.). The plaintiff advised TDCJ officers that he was having trouble breathing in the administrative segregation housing and complained that he suffered from "at least one asthma attack, and was observed wheezing, in the month before his death." *Id.* In other words, a court could find that a plaintiff who was obviously suffering from asthma would clearly need accommodation from being placed in conditions that a plaintiff has described as being "excessively hot" and with "poor ventilation." *Id.* In contrast, the Fifth Circuit found in another case that plaintiffs in wheelchairs could not demonstrate that defendants had actual knowledge of their "unique inability to keep their hands clean or that this limitation was open, obvious, and apparent," despite the arguably open and obvious fact that "mobility-impaired inmates must immediately touch the dirty rims and wheels of their chairs, canes, or walker to return to the

cubicles where they live and eat." *Valentine v. Collier*, 993 F.3d 270, 290–91 (5th Cir. 2021) (internal quotation marks and citation omitted).

Plaintiff fails to allege that he informed prison officials of any limitation or impairment of his ability to enjoy any TDCJ program, service, or activity.  Because any such limitation and necessary reasonable accommodation (as opposed to Plaintiff's underlying condition) were not open, obvious, and apparent, Plaintiff fails to allege a viable ADA or RA claim stemming from confiscation of the boot.  The undersigned therefore recommends dismissal of those claims as frivolous and for failure to state a claim upon which relief may be granted.

### c.  Additionally, Plaintiff's allegations are merely a disagreement with his medical treatment.  They do not state a viable ADA or RA claim.

Additionally, Plaintiff's contentions fail to state an ADA or RA claim upon which relief may be granted because his allegations merely reflect disagreement with his medical treatment. Such disagreement does not constitute a viable claim, so Plaintiff's ADA and RA claims should be dismissed.

The ADA and RA do not establish a "standard of care" for medical treatment in prisons. *See Hale v. Harrison Cnty. Bd. of Supervisors*, 8 F.4th 399, 404 n.†; *Walls v. Tex. Dep't of Criminal Justice*, 270 F. App'x 358, 359 (5th Cir. 2008).  The ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners.  *Hale*, 8 F.4th at 404 n.† (citing *Nottingham*, 499 F. App'x at 377).  And the ADA does not create a remedy for medical malpractice or medical negligence.  *Cadena*, 946 F.3d at 726; *Bryant*, 84 F.3d at 249.  A plaintiff cannot bring an ADA or RA claim simply by restating a claim of denial of medical care, and a plaintiff's disagreement with medical treatment likewise does not state a claim under the ADA or RA.  *See Whetstone*, 2018 WL 1022586, at *2 ("The ADA and RA exist to protect individuals

from being discriminated against because they have disabilities; they do not exist to challenge a person's treatment for a disability.").

In this case, Plaintiff's allegations simply state a disagreement with his medical treatment. The timeline of events in this case demonstrates this. Prior to Plaintiff's alleged fall down the stairs at the prison on January 4, 2022, he had a leg condition, but did not have an orthopedic boot. Plaintiff allegedly fell down the stairs, was taken into town to the emergency room, and was given the orthopedic boot by the emergency room doctor. (Doc. No. 10, p. 69.) Plaintiff states in his grievance that the emergency room doctor directed him to wear the boot "until I reached a comfort level." (Doc. No. 1-1, p. 3.) Dr. Kwarteng did not confiscate the boot immediately upon Plaintiff's return from the hospital. (Doc. No. 10, pp. 72-73.) More than a month later, on February 6th, RN Samuel allegedly ordered the confiscation of the boot, because, among other reasons, Plaintiff did not need it. *Id.* at 69, 71. Meanwhile, Dr. Kwarteng and prison officials continued to monitor Plaintiff's need for long-term care for his leg condition by scheduling a referral to the Brace and Limb clinic. (Doc. No. 1-1, p. 4; Doc. No. 10, p. 73.) Plaintiff obviously disagrees with the decision to confiscate the boot but fails to allege that the decision was based on his disability. His ADA and RA claims therefore are frivolous and fail to state a claim upon which relief may be granted.

Cases like *D.B. v. CorrectHealth East Baton Rouge, LLC*, do not impel a contrary result. In *D.B.*, the plaintiff, who suffered from Asperger's Syndrome, alleged that the defendants denied medical care and refused to address his mental health needs, expressly rejecting his request for accommodation. No. 19-620-JWD-EWD, 2020 WL 4507320, at *2-4, *14 (M.D. La. Aug. 5, 2020). Plaintiff's case is distinct. Here, there is no allegation that Plaintiff made any request for any accommodation, much less that any request was rejected.

33 / 35

Because Plaintiff's ADA and RA claims merely reflect his disagreement with his medical treatment, and not discrimination based on a disability (whether intentional or through a failure to accommodate), his ADA and RA allegations are frivolous and fail to state a claim upon which relief may be granted. The undersigned therefore recommends dismissal of those claims for these reasons as well.

### F. Recommendation.

For the reasons stated above and for purposes of 28 U.S.C. §§ 1915A and 1915(e)(2), the undersigned recommends that the Court DISMISS Plaintiff's action with prejudice. The undersigned also recommends that this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g), and that the Clerk of Court be instructed to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

### G. Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **14 days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District

Court.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

      SIGNED on December 7, 2022.

MITCHEL NEUROCK
United States Magistrate Judge

35 / 35